IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| USIO, INC., *Plaintiff* | § § § § § § § § § | SA-23-CV-00840-XR |
| -vs- | | |
| BEN KAUDER, NINA PIOLETTI, TRIPLE PLAY PAY, INC., *Defendants* | | |

## ORDER

On this date, the Court considered Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 4), Plaintiff's response (ECF No. 5), and Defendants' reply (ECF No. 6). After careful consideration, the Court **GRANTS** Defendants' motion.

## BACKGROUND

In the fall of 2017, Plaintiff USIO, Inc. ("USIO") acquired the ownership interests of a payment processing company based in Nashville, Tennessee called Singular Payments ("Singular"). ECF No. 1-1 ¶ 8. Upon this acquisition, Defendants Ben Kauder ("Kauder") and Nina Pioletti ("Pioletti" and, together with Kauder, the "Individual Defendants"), formerly executives at Singular, transitioned into executive-level positions within USIO. *Id.* At USIO, Kauder served as the Senior Vice President of Integrated Payments, while Pioletti served as the Director of Sales. *Id.* Kauder resigned from USIO in May 2021, and Pioletti resigned in July 2022. *Id.*

While at Singular, both Kauder and Pioletti signed contractual agreements agreeing to: (a) abide by certain non-solicitation and non-compete provisions; and (b) keep information disclosed or made known to them in the course of their employment confidential. ECF No. 1-1 ¶ 9. USIO

contends that "[w]hile Kauder and Pioletti may have been released from the above obligations by Singular immediately prior to USIO's purchase of the ownership interests in Singular, their common duty to protect and not use USIO's trade secrets and confidential information remained intact." *Id.* ¶ 10. Moreover, USIO alleges that both individuals contractually agreed to maintain the confidentiality "of all information so entrusted to them" by USIO. *Id.* ¶ 11.

Although USIO has its corporate headquarters in San Antonio, Texas,[1] Kauder and Pioletti's designated work locations were in Cincinnati, Ohio and St. Augustine, Florida, respectively. *See* ECF Nos. 4-2, 4-3. During their tenure with USIO, however, both Kauder and Pioletti had repeated contacts with the state of Texas in the course of their work, including on business trips to headquarters and to meet with USIO clients.[2] ECF No. 5 at 9–10. Both reported to USIO executive personnel at headquarters and accessed USIO's servers in San Antonio and Dallas, Texas. ECF No. 5 at 6–7.

Plaintiff maintains that, after Kauder and Pioletti resigned from their positions at USIO, they formed a competing payment processing company—Defendant Triple Play Pay, Inc. ("TPP"). TPP was incorporated in Delaware on June 21, 2021, and has its principal place of business in Tennessee. ECF No. 1 ¶ 3; ECF No. 1-1 ¶ 12. USIO argues that because TPP provides the same services as USIO, Defendants have intentionally and willfully misappropriated USIO's confidential and protected information in forming and operating TPP. *Id.* Specifically, USIO alleges that its service enrollment page's similarity to TPP's service enrollment page and TPP's use of similar investor presentations show that Kauder and Pioletti breached their confidentiality agreements with USIO, and that Defendants have misappropriated USIO's trade secrets and

---

[1] As USIO's headquarters, the San Antonio office was responsible for administering Kauder and Pioletti's payroll and stock options, issuing their laptops, and managing expense reports. ECF No. 5 at 7.
[2] In particular, USIO alleges in its response that Kauder traveled to Texas a total of nine times during 2019–2020, ECF No. 5 at 10, and that Pioletti travelled to Texas on four occasions during 2019–2021, *id.*

engaged in unfair business competition. ECF No. 1-1 ¶¶ 13–14. Defendants contend these similarities are simply irrelevant as USIO's service enrollment page and investor presentations that TPP allegedly copied are publicly facing and publicly available on USIO's website, respectively. ECF No. 6 at 5–6; ECF No. 6-3.[3]

On June 21, 2023, USIO filed a petition in the 131st Judicial District Court, Bexar County, Texas, alleging claims for breach of contract against Kauder and Pioletti, as well as common law misappropriation of trade secrets and unfair business competition against Kauder, Pioletti, and TPP. ECF No. 1 ¶ 1. Defendants subsequently removed the action to this Court on diversity grounds. *Id.* ¶ 2. Defendants now move to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). ECF No. 4.

## LEGAL STANDARD

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). As the party seeking to invoke the power of the court, [Plaintiff] "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). In evaluating a motion under Rule 12(b)(2), the Court must accept uncontroverted allegations in the complaint as true and must resolve all factual conflicts in favor of the non-movant. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins, Co.*, 921 F.3d 522, 539 (5th Cir. 2019). However, the Court can look beyond the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Indeed, the district court may consider the contents of the record at the time of the

---

[3] *See also SEC Filings*, USIO, https://usio.com/sec-filings/ (last visited Dec. 8, 2023).

motion. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citations omitted).

There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Id*. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*[4] Due process requires that a defendant have "minimum contacts" with the forum state and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id.*

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Id.* In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

The Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "(1) whether the defendant has minimum contacts with the forum state, i.e.,

---

[4] Texas's long-arm statute specifically provides that, "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

    (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
    (2) commits a tort in whole or in part in this state; or
    (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

4

whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). Even where a defendant has no physical presence in the forum state, a single purposeful contact may be sufficient to confer personal jurisdiction if the cause of action arises from the contact. *Nuovo Pignone*, 310 F.3d at 379.

Specific jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). In determining whether a defendant has minimum contacts with a state, courts consider whether the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)). For a court to exercise jurisdiction over a defendant, the relationship between the defendant and forum state "must arise out of contacts that the 'defendant himself' creates with the forum State," *Walden*, 571 U.S. at 284, not out of "the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State," *id.* at 286 (quoting *Burger King,* 471 U.S. at 475). In other words, the plaintiff cannot be the only link between the defendant and the forum. *Id.*

As the party seeking to invoke the power of the court, Plaintiff "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software*, 688 F.3d at 219 (quoting *Seiferth*, 472 F.3d at 270). "In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in [his]

5

favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id.* at 219–20.

## ANALYSIS

### A. Specific Jurisdiction over Defendants

Because specific jurisdiction is a claim-specific inquiry, the Court will analyze Defendants' forum-related contacts on a claim-by-claim basis. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022).

#### 1. Claims for Breach of Contract

With respect to USIO's breach-of-contract claim, it is "well settled that 'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'" *Pervasive Software*, 688 F.3d at 222–23 (alteration in original) (quoting *Burger King*, 471 U.S. at 478). Additionally, "[n]egotiating and closing a contract with a forum resident by sending communications into the forum state is insufficient to establish specific personal jurisdiction for a breach of contract claim." *First Metro. Church of Houston v. Genesis Grp.*, 616 F. App'x 148, 149 (5th Cir. 2015) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985)). Rather, the contract must create a "substantial connection" with the forum. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n.12 (Tex. 1991).

In determining whether a contract represents a substantial enough connection with the forum state to constitute purposeful availment, courts consider the following factors: (1) prior

negotiations; (2) future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing. *See Burger King*, 471 U.S. at 480. Nonetheless, to exercise specific personal jurisdiction, the claim must relate to the defendant's forum-related contacts. *See The Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2015 WL 4508424, at *18–20 (N.D. Tex. July 24, 2015); *see also McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Here, the terms and contemplated future consequences of Kauder and Pioletti's alleged agreements at issue, as well as the parties' actual course of dealing—particularly Kauder and Pioletti's repeated trips to Texas—indicate that both Kauder and Pioletti purposefully availed themselves of the benefits and protections of doing business in Texas. However, the more difficult question is whether Kauder and Pioletti's forum-related contacts are sufficiently related to USIO's breach-of-contract claims.

To answer this question, the Court finds *The Leader's Institute, LLC v. Jackson*[5] instructive. In *Jackson*, the court declined to exercise specific personal jurisdiction over claims for breach of contract and trade secret misappropriation filed by a Texas-based company and its Chief Executive Officer against a former remote worker in Florida. *Id.* at *17.[6] The plaintiffs alleged defendant had sufficient contacts with Texas for the court to assert specific personal jurisdiction based on the defendant's five-year employment relationship with the company, which was headquartered in Arlington, Texas, including her two trips to Texas, communications with and sales to Texas-based customers, communications with Texas-based support personnel, submission of payment requests, a signed non-disclosure agreement, and payments from the employer's Texas bank account. The plaintiffs further asserted that the defendant "routinely accessed [her

---

[5] *The Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2015 WL 4508424, at *1 (N.D. Tex. July 24, 2015).
[6] In *Jackson*, the court declined to address whether the defendant was in fact an employee or an independent contractor, noting that such a fact would not alter its analysis. 2015 WL 4508424, at *3 n.2.

employer's] customers list and related intellectual property stored on servers located in Texas," and that she "use[d] [the p]laintiffs' trade secrets to compete with [p]laintiffs in Texas and elsewhere, knowing the effect her unlawful conduct would have on [p]laintiffs in Texas." *Id.* at *18.

The *Jackson* court concluded, however, that these forum-related contacts bore "only a superficial relation to the misconduct alleged," specifically noting that plaintiff failed to allege how "[defendant's] numerous communications with [plaintiff's] personnel and customers, her sales proposals for Texas customers, or her payments from Texas gave rise or relate to the misappropriation at issue." *Id.* at *19. Further, the court noted that defendant's trips to Texas were "merely work related and have nothing to do with the underlying suit." *Id.* In essence, the court in *Jackson* recognized that while the defendant's contacts were related to her general relationship with the plaintiffs, none of the alleged contacts were related to the gravamen of the breach-of-contract claim—the misappropriation of confidential information.

As in *Jackson*, the Individual Defendants had an employment relationship with USIO, a Texas-based company, for several years and, in that time, made occasional business trips to Texas. ECF No. 1-1 ¶ 8; ECF No. 5 at 10. Notably absent, however, is any connection between the alleged misconduct breaching the confidentiality agreements and the forum-related contacts asserted by USIO. According to USIO, Kauder and Pioletti allegedly accessed servers in Texas during their employment. ECF No. 5 at 10–11. At some point, they also allegedly copied information from USIO's publicly facing service enrollment page and publicly available investor presentations. ECF No. 1-1 ¶¶ 13–14; ECF No. 6 at 5–6; ECF No. 6-3.[7] But USIO does not allege with any particularity

---

[7] Affidavits submitted by the Individual Defendants take issue with USIO's allegation of server access, noting that Kauder and Pioletti only had access to email while working at USIO. ECF Nos. 6-1, 6-2. Moreover, as noted above, USIO's primary complaint appears to be that Defendants allegedly copied USIO's service enrollment page and

that the Individual Defendants used information they accessed on USIO's servers as employees in supposedly misappropriating confidential information. *See id.* ¶¶ 19, 21. Nor does USIO allege that Kauder or Pioletti accessed and misappropriated confidential information while on business trips to Texas or misappropriated information gleaned from or violated the purported confidentiality agreements, based on their contacts with Texas beyond their general employment relationship with USIO.

Indeed, USIO's offer letters specifically identify Kauder and Pioletti's work locations as being Cincinnati, Ohio, and St. Augustine, Florida, respectively. *See* ECF Nos. 4-2, 4-3; *see also* ECF No. 5 at 49 (conceding that "Kauder and Pioletti worked in offices outside of Texas[.]"). No agreement between USIO and Kauder or Pioletti contemplates performance by the Individual Defendants in Texas. *See* ECF Nos. 4-2, 4-3; ECF No. 5 at 18–45. Many of the other alleged forum-related contacts constitute unilateral activities performed by USIO in Texas, such as providing laptops, awarding stock options, and managing payroll. But these alleged contacts are insufficient to give rise to specific personal jurisdiction as to this particular claim of breach of contract. *See Moncrief Oil Int'l, Inc. v. Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ("[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas.").

Taken together, the Individual Defendants' alleged contacts with the state of Texas are insufficiently related to Plaintiff's breach-of-contract claim for this Court to hold that Kauder or Pioletti could reasonably foresee being haled into court in Texas. Thus, the Court declines to

---

investor presentations. ECF No. 1-1 ¶¶ 13–14. However, as Defendants point out, this information is publicly facing and publicly available online, respectively. ECF No. 6 at 5–6; ECF No. 6-3.

exercise specific personal jurisdiction over the Individual Defendants with respect to USIO's claim for breach of contract.

2. **Claim for Misappropriation of Trade Secrets and Unfair Business Competition**

The Court also declines to exercise specific personal jurisdiction over Defendants with respect to Plaintiff's claim for misappropriation of trade secrets and unfair business competition.[8] The Fifth Circuit has noted that "mere injury to a forum resident is not a sufficient connection to the forum . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Danziger*, 24 F.4th at 495–97.

Defendants argue that jurisdiction is improper here as USIO "makes no allegation that any Defendants engaged in any conduct in Texas to supposedly misappropriate investor slides[.]" ECF No. 6 at 5–6. Indeed, Defendants contend that USIO's service enrollment page was publicly facing, requesting only basic information from potential enrollees, and USIO's investor presentation was publicly available "for the world to see." *Id*. The Individual Defendants further insist that they did not have access to USIO's servers in Texas, although they concede that they had access to email during their respective periods of employment with USIO. *Id.* Defendants thus assert that they are not subject to personal jurisdiction in this forum because they did not engage in any allegedly tortious conduct *in* Texas. *Id.*

Much like those in *Jackson*, the forum-related contacts alleged here are at best only superficially related to USIO's claim for misappropriation of trade secrets and unfair business competition. *See also Wheel-Source, Inc. v. Gullekson*, No. 3:12-CV-1500-M, 2013 WL 944430

---

[8] Though USIO brought a common law claim for misappropriation of trade secrets and unfair business competition ECF No. 1-1 ¶¶ 20–22, common law claims for misappropriation of trade secrets are preempted by the Texas Uniform Trade Secrets Act ("TUTSA"). *See StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333 (E.D. Tex. 2019).

(N.D. Tex. Mar. 12, 2013) (declining to exercise personal jurisdiction over a former employee sued, *inter alia*, for breach of contract and misappropriation of trade secrets where gravamen of claims rested on actions outside of Texas, unrelated to the employee's forum-related contacts).

While some courts have found allegations of server access by present and former employees are sufficient to establish a *prima facie* case of specific personal jurisdiction, *see Caris MPI, Inc. v. Eastman*, No. 3:14-CV-396-N, 2014 WL 12584417, at *4 (N.D. Tex. July 28, 2014), there is no allegation here that the alleged server access is related to USIO's claim for misappropriation of trade secrets and unfair business competition. Simply put, a bare allegation of server access without any meaningful connection to the underlying claim cannot justify the exercise of specific personal jurisdiction.

### D. Jurisdictional Discovery

As with all discovery matters, the question whether to permit jurisdictional discovery is committed to the district court's discretion. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). As the party opposing dismissal and requesting discovery, the plaintiff bears the burden of demonstrating the necessity of discovery. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). A plaintiff seeking jurisdictional discovery is expected to identify with particularity the discovery sought, explain what information it expects to obtain, and explain how that information would support the assertion of personal jurisdiction; failure to do so warrants denial of leave to conduct the discovery. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014) (citations omitted).

USIO requests discovery to determine the "scope and extent of TPP's contacts with USIO's current and former clients and the State of Texas." ECF No. 5 at 14. USIO maintains that "it is probable that TPP marketed to USIO customers in Texas, viewed USIO's data and website with was created in Texas, passed through Texas servers to access this information, and worked with Kauder and Pioletti for information about their time with USIO[.]" *Id.* However, USIO has not sufficiently demonstrated how discovery here might bolster its jurisdictional arguments. Rather, USIO's request ultimately strikes the Court as a request to embark on a fishing expedition to bolster its case on the merits. The Court therefore **DENIES** USIO's request for jurisdictional discovery.

## CONCLUSION

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 4) is **GRANTED**. USIO's claims for breach of contract, trade secret misappropriation, and unfair business competition are **DISMISSED WIITHOUT PREJUDICE** for lack of personal jurisdiction. A final judgment will issue separately pursuant to Rule 58.

It is so **ORDERED**.

**SIGNED** this 8th day of December, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE